Good morning your honors, let me please the court, Humberto Guizar for the plaintiff Vincent Forbes, an appellant. First of all I wanted to mention here most importantly that what happened in this trial with Mr. Forbes was a gross injustice. He was prevented from presenting evidence that would have suaded, at least balanced the competing theories of both cases. We had an officer in this case who claimed he did nothing. From the very outset of the litigation of this case, from the very beginning, their theory was it was a non-event, that nothing happened to Mr. Forbes. He was walking in line and he tripped on his own chains and that was all that happened. And throughout the course of the litigation there was a continuous obfuscation of the facts and mischaracterization of everything that happened. Over and over they hid witnesses from the plaintiff. There were witnesses that saw what happened, but we had to file motions to compel, to force the defendants to produce the witnesses that had seen what happened. After protracted litigation for three years, finally after a motion to compel, I find this witness, Mr. Gonzalez, and I take his deposition. But before I did that I had to make a motion to extend the trial date so I could have the opportunity to take his deposition. I had to get an order from the court. I got an order from the court. We took his deposition while he was incarcerated. Defense counsel was present. He cross-examined this witness. There was a full opportunity to question him about anything that happened. And so everything was going smoothly. We were at trial, in the midst of trial. Defense counsel had agreed with me and redlined portions of the deposition transcript that we would read on the record so that the court could hear, that the jury could hear, this independent witness. At the time I tried to read it, that's when defense counsel objected and said that I had not paid a witness fee and therefore the witness was technically not unavailable. Can I ask you this, counsel? Counsel, can I ask you this? When you served the witness with the trial subpoena, I think that was on July 10th, am I getting the date right? Yes. Okay, so on that date, did you know when the witness was going to be released from prison or from jail, wherever he was? No, I did not. When did you first learn? I'm sorry, go ahead. If I may, Your Honor, I did not know at that time. We did not know until we took his deposition. That's what I was wondering. So the first time you learned that he was not going to be in custody on the date of trial was when you took the deposition a couple weeks later? That's correct. Okay, got it. And I had the check in my hand. In the midst of trial, in the tension of trial and everything that's happening, it caught me off guard when the court asked me where is the proof that I had paid him a check. And I tried to, in my mind, go back to what had happened. And I couldn't really come up with an explanation. But I did recall that I specifically tried to give him a check, but the witness, it's kind of ironic, but the witness himself, an incarcerated person, knew the law. And he said I could not give him a check according to the procedures there in the county jail. Well, he was wrong. The witness was wrong. You could have given him a check for trial testimony because he wasn't going to be incarcerated anymore. Well, I tried to give him the check, and he said I could not give him the check because, no, when I gave him the subpoena, he said I could not give him a check. And I could not give him a check. And the subpoena was for the deposition or for the trial? No, it was for the trial. But wasn't that at the deposition? No. The deposition was separate. When I took his deposition, I didn't give him a check for his deposition. I also tried to give him a check for the deposition, and that was a separate matter. But the bottom line here is that – Sorry. I thought you'd clarified this, but now I'm confused again. So when did you first try to give him the trial subpoena? On July 10th, before the deposition. Before the deposition. Correct. And did you personally go to the prison and try to give him that trial subpoena? I did. And at that point, he said, I can't take this check because I'm incarcerated? That's correct. And at that point, you didn't know that he would no longer be incarcerated by the time of the trial? No, I did not. So then at the deposition, he tells you, I'm going to get out soon? Yes. And what did you do thereafter to serve a trial subpoena on him? Well, you know, the record is convoluted in that regard. Defense counsel provided a very long mischaracterization of what happened. But what did happen is I immediately, after I knew he wasn't available for trial, was looking all over the place. I was calling the jail. I was calling the probation office. I called the center, the rehab centers that I knew existed in Orange County, and they would not give me any information because of their privacy rights. So it's ridiculous to believe that somehow I had an opportunity to find him in a rehab center when he had a right to be in there without nobody knowing where he was at because of the privacy rights that he had. Is it in the record that you called the rehab center where you thought he would be? I did. My declaration indicated that I had attempted to find out what rehab center he was at. I called a few of the rehab centers. And when was the declaration submitted? It was submitted, I believe it was the next day at trial, during the course of trial. It was at the trial. Right. It's really a weird situation because there is this section that says, 18 U.S. 1821 F, that says that you cannot give a witness a witness fee that you're deposing if he's incarcerated. Well, that's not quite what it says. It's just whether he's going to be incarcerated at the time of the testimony. That's what it says. That is accurate. But when I gave it, I didn't know if he was for sure going to be released or not. So what was I supposed to do? I wasn't sure. He's saying he was going to be released. But, you know, when someone's incarcerated, there's sometimes delays. There's things that happen. And am I supposed to guess or assume for sure he's going to be released? The fact of the matter is that the statute says you cannot give him a witness fee if he's incarcerated at the time. And I believe that's what the statute says. So we have a conflict with this. I'm looking at ER 116. And I see in paragraph 7 that you say that you contacted the probation office and the Orange County Jail and the County of Orange parole office. But I don't see anything about it saying that you contacted rehab offices. Is that somewhere else in the record? Is that on my brief, Your Honor? That's your declaration, I think. You're Mr. Guizar, right? That's correct, Your Honor. Yes, so your declaration, paragraph 7 at ER 116, doesn't say that you contacted the rehab facilities, which I think you had reason to believe he was in some rehab facilities. So I understand that you're saying now that you called rehab facilities, but I'm wondering if the district court had any way to know that. I have no recollection of that exact fact, that I would be misleading the court if I said I did do that for sure. But I recall, I'm telling you, Your Honors, that I did do that. I had an investigator try to look. But it seems like that fact might be important for whether the district court abused its discretion because the district court was trying to figure out what efforts had been made to find this witness. And the efforts that you made are significant. So was there also, is there anywhere where you said that on the transcript, that the rehab facilities keep confidential records, and so you tried but you couldn't succeed? Your Honor, that, we're right on, you're hitting it right where we need to go because I was trying to make that record. Besides my declaration, I was trying to explain to the court, and he cut my feet off and said, no, that's it, no more record. You're not going to talk about this no more. And that's very clear on the record that he did that. And basically, it would have just been a 15-minute reading of a deposition. But the jury was entitled to judge the credibility of the witness. I mean, depositions are allowed sometimes, but it's not ideal testimony. Well, there was no other testimony, Your Honor. There was no other witness. Well, sometimes no testimony is better than on the record, you know, where you can't see the witness. Well, I respectfully disagree, Your Honor. You have a witness. You have a plaintiff who was incarcerated in the jail who is alleging a police officer used excessive force. And you're already under, the balance is already starting off uneven because you have, the officer generally has more credibility right off the bat. I thought there was a general instruction which says, excluded jurors on that, if they believe that. In theory, that's correct. But in reality, when you're in trial and you're suing a police officer, the cards are stacked against you right off the bat. So when you have that situation, you need to have an independent witness. And I should add that I told the jury in opening statement that I had evidence that would show, that would corroborate the plaintiff's version of his facts. And this witness almost identically testified as to what happened to the way the plaintiff testified at trial. At trial. But the plaintiff never complained about injury up until this litigation, did he? Well, that's a characterization of the defense, Your Honor. That isn't true. He immediately complained. He was on the floor and he was in agony. Other inmates had to help him into his cell. But he had opportunities to complain to others that he had been injured, and he didn't. That's true. But in the Orange County Sheriff's system, inmates that complain are retaliated against. I think that's a public record that we know of that happens in the Orange County jails. So he was scared to do that. Can I ask you another question just about this witness? So when you gave your opening statement at the outset of trial, did you already know that Mr. Gonzalez, I think you said his name was, did you already know that you weren't going to be able to call him? In other words, that he had... When I took his deposition, he gave me a promise that he said he was going to appear, that it wouldn't be a problem. And I said, if you have any problems getting to court, I'll go pick you up, or I'll get someone to pick you up and bring you to court. Okay, well, that's what I'm trying to figure out. So when trial started, I assume you made some efforts to get in touch with your key witness and make sure that he was going to be there. Did you already know that you couldn't find him as of the start of trial? No, I believe, if my recollection serves me right, I had an investigator actively trying to find him. We were actively trying to find him. But I, and I guess, I mean, I did everything I could. I assumed that former testimony in the form of a deposition transcript would be admissible. But I did. Hang on, hang on, hang on. Okay, yeah, of course. Hang on. So I'm just trying to get it straight. So before trial, you, as any competent lawyer would do, made efforts to track this witness down to make sure that, in fact, he was going to be there. But when the trial started, you knew that he had disappeared and you couldn't find him. Is that right? Yes. Okay, so, and you knew, though, that you had this deposition, and you intended to ask the court for permission to read it on the ground that the witness was now unavailable, right? That is correct. And I had that communication with Mr. Lawrence, who's here. And he didn't tell me, well, I'm going to object that the witness is not unavailable at that time. He got, I'm sorry, go ahead, Your Honor. Go ahead. I don't want to cut you off. No, no, I mean, they contest that in their brief, so I wanted to hear what you had to say about that. They said that they didn't let you know well in advance that they weren't going to agree to that. That's a total mischaracterization of what actually happened. He sat down with me, and he picked this section of the deposition transcript he was going to read from. And he asked me, have you been able to find him? And I told him my co-counsel, Mr. Geringer, was out looking for him with an investigator. We were trying as hard as we could to find the witness. Obviously, his physical presence in the courtroom would have definitely made a big difference as opposed to a deposition transcript. I don't see how, I mean, defense counsel had to anticipate that he might lose this issue. And so, therefore, it was in his professional obligation to review the transcript with you. I don't understand how going over the transcript with you shows that he was not going to object. You know, professional courtesies, I've been doing this civil rights type work for 27 years, and I rely a lot on professional courtesies. And if he would have said, you know, I'm going to object, if he would have said it the day before, I'm not going to agree. I'm not going to agree to sign this portion. If he would have given me that indication, I would have asked the court to give me leave to maybe continue the trial so we wouldn't end up in a situation like this. But it caught me off guard when I tried to read from it because I was under the impression everything was good. It was former testimony under oath. He cross-examined this witness. He had an opportunity to question him. And there was no reason why it should not be admitted. I mean, it went right to the key, right to the heart of what happened here. This witness testified that he saw the plaintiff thrown up against the plexiglass wall and then slammed to the ground, the deputy getting on top of him. Consequently, Mr. Forbes had two surgeries, a neck and back surgery, fusions, significant injuries, over $500,000. And over $50 witness fees, we were prevented from the jury deciding. I don't mind losing the fight, but I do mind losing a fair – it has to be a fair fight. And this was not a fair fight. When they prevented us from having that witness testify, that was not fair. It was fundamentally just simply unfair. Let me ask you because I'm not familiar with the way things are done in California. Why didn't you call the other side and tell them about the witness problem? I mean, I would think in Maryland that's what would happen. I've tried to find the witness. I've called probation. I, you know, can you help me out with this? I did make that effort, Your Honor. Is it in the record that you made the record? I told – no, that's not on the record. Those are informal discussions that you have with counsel. You know, I'm not going to come up here and misstate. I have honor, and I'm going to tell you exactly what happened. We'll give you a minute for rebuttal after your opposing counsel speaks. Good morning, Your Honors. David Lawrence on behalf of Apolli Daniel Villa, and it pleases the Court. Let me first address counsel's assertion that he was somehow sandbagged about whether or not we would object to the introduction of the deposition testimony. In no fewer than seven locations in the record did we assert that there was no evidence that he was unavailable. And I'll cite the court to the record. On August 7th is when appellant's counsel said that the witness was unavailable. Our response was that we did not agree he was unavailable. That's at the excerpts of the record at pages 55 and 65. On August 12th, Plaintiff's counsel filed a notice of intent to read the deposition. Again, we said we did not agree that he was unavailable, and we requested a proof of subpoena. That's in the excerpts of the record at 56 and 67. The next day, August 13th of 2007, we stated we did not agree that he was unavailable, that we had not received the proof of service, and there was no agreement to the reading of the deposition. The next day, August 14th. Sorry, can you give us the ER pages for each of these? I'm sorry. On that one, that's excerpts of the record, page 56 and 69. On August 14th of 2013, there was a follow-up letter reiterating our position that he was not unavailable, and that's at the excerpts of record at pages 56 and 71. On the 14th, we suggested to Plaintiff's counsel that he check the sober living center that the witness had identified at his deposition to see if he was there. That's at the excerpts of record at pages 56 and 73. On August 16th of 2013, we filed our counter-designation, and in our counter-designation of the testimony, we stated, quote, in the event the witness, Edward Gonzalez, is unavailable for trial. That's at the excerpts of record at page 138. On August 19th of 2013, we filed our objections to the use of the deposition with the court. That's at the excerpts of record at page 135 and the supplemental excerpts of record at page 710. Trial began on August 20th, and we continued to object when plaintiff offered or attempted to offer the deposition testimony of the witness. The assertion that we somehow sandbagged plaintiff by saying we were in agreement that the deposition testimony could be read to the jury is simply not true. It's abundantly refuted by the record. Let me turn to a different issue then. We'll take a look at those record sites. I think I remember seeing at least a few of them in reviewing the materials for this case, but let's focus on Rule 32A, I think it's A4D. Not the exceptional circumstances subsection, but rather the subsection D. Why is it that the district court's ruling with respect to that provision is correct? Let me tell you what my memory of the district court's ruling is, and then you tell me if I've gotten it wrong. With respect to that subsection, I thought all the court said was that service of the subpoena was invalid because witness fees were not tendered contemporaneously with service of the subpoena, right? That's correct. Is that correct? Yes. That's why I was asking your opponent when he first learned that the witness was not going to be in custody as of the date of trial, because when he served the subpoena on July 10th, I gather you're not going to contest this, he had no way of knowing then that the witness was going to be out of custody come the trial date a couple months later, right? I don't know whether he knew that at that point. What I do know is that- Well, the only thing I saw on the record was the deposition testimony, which occurred two weeks later, and that's the first indication I saw that any of you all learned that this witness come the trial date was not going to be in custody. The district court's rationale for finding the witness not to be unavailable under subsection D strikes me as wrong, because what you have to then assume is that every time somebody is going to serve a subpoena on a prospective witness who's in custody, they have an obligation to do some kind of research into that person's release date to figure out whether or not they're going to be in custody come the anticipated testimony. That strikes me as not a very sound rule, and I haven't seen any authority that imposes it. My view of the case is that on the date of the service of the subpoena, the plaintiff's lawyer knew that the witness was in custody then. He was entitled to assume that he was going to be in custody as of the date of the trial, and therefore had no obligation to tender the fees. And that's, as I said, the sole reason I saw the district court give for rejecting the argument under subsection D. So what's your response to that? My response to that, Your Honor, is that the record shows that the subpoena was served on the 10th. Counsel stated on the 21st, August 21st, to the court that Orange County would not allow him to serve him, would not allow him to give him fees. Later that same day on the 21st, and that's a supplemental excerpt with records 618 and 619. Later that same day, plaintiff's counsel said that he gave a check to the witness at the deposition on July 25th. So we knew... Hang on, hang on. Tell me if I'm wrong on this. I understood the district court to say that I'm not going to accept service of the subpoena as valid, because on July 10th, you did not tender witness fees to the witness. That's correct. Right. Okay, but I'm just saying that that... How was the plaintiff's lawyer supposed to know on that day that he even had an obligation to tender witness fees, unless you're saying that the law imposes some kind of a requirement that a person go and research the prospective release dates of every incarcerated witness they intend to serve a subpoena with. That just strikes me as an odd rule. Rule 45 says that the fees need to be tendered contemporaneously with service of the subpoena. Right, if you know that the person's not going to be in custody on the date of their anticipated testimony, but he didn't know that. I don't believe that 28 U.S.C. Section 1821F, which I think Your Honor is referring to, okay, indicates that if the witness is in custody at the time the service is made, that the fees don't have to be tendered. What it says specifically is that, quote, any witness who is incarcerated at the time that his or her testimony is given, and it lists an exception, may not receive fees or allowances under this section, regardless of whether such a witness is incarcerated at the time he or she makes a claim for fees or allowances under this section. Now, what the district court determined was the point of that section was that if at the time of the testimony, the person is incarcerated, the taxpayers are paying for his expenses, it shouldn't be paid twice. It doesn't say that if he's incarcerated at the time the subpoena is served, that the witness fees are not to be tendered. But if you don't know that the person is going to be out of custody come the date of the anticipated testimony, how are you supposed to know that you have to tender the fees? Why am I not, if I'm in plaintiff's counsel's shoes, and I know I'm going to call, at that point I guess the trial was a month or so away, I know the person's in custody. I don't know anything about whether they're going to be released in the next four weeks or not. So why am I not entitled to assume until I learn, to the contrary, that this person doesn't need to be given the witness fees because they're in custody right now? Because there's nothing that excuses that exception under Rule 45, the tendering of fees contemporaneous with the service of the subpoena. So I have to do research to figure out, before I try to serve a subpoena on someone, I have to do research into their anticipated release date, is that what you're saying? No, what I'm saying is if you're deposing a witness who is in custody, you have to tender those fees, whether it's giving them the fees or the promise to give them the fees at a later time, you have to do that at that point. But you can't do that if you think they'll still be in custody at the time of the trial when they need the testimony. I don't see anything that says you can't do that. And I don't see anything that excuses the obligation. Well, let's assume he wasn't. Let's assume he was going to stay in custody. What do you think should have happened when they served the subpoena? He was going to stay in custody? I think he should have tendered the fees. To whom? I thought there was a rule that said he wasn't supposed to because the taxpayers aren't supposed to double pay. No, what it says is that if he is incarcerated at the time of his or her testimony is given. Yes, so let's assume he would still be. Let's have a hypothetical. The witness is in prison when you serve the subpoena, and the witness will still be in prison at the time of the trial, so that's the time of the testimony. Right. What are you supposed to do when you serve the subpoena? You tender the fees. To whom? To the witness. But I thought you can't because the taxpayer is not supposed to double pay. He reimburses those or gives them back if he's still incarcerated at the time he testifies. He can't accept them if he testifies at the time he's incarcerated. The point is that the taxpayers don't pay twice. They don't pay to have him incarcerated, and they don't pay to bring him to court. Counsel, I think you're wrong on that point. Just respectfully, I just disagree with you on that. So I guess my issue is this. I think service of the trial subpoena was valid on July 10th. So help me with this. Am I entitled, if I'm in plaintiff's counsel's shoes, I've served this person with a subpoena, am I entitled just to assume that they'll obey that and when they don't show up, at that point I've done all that I could. I did serve them with a valid subpoena, or am I required to do a whole lot more before the witness can be declared unavailable? I haven't been able to find a lot of case law that speaks directly to that issue, so I'd like to hear what you have to say about that. I think they have to make a diligent effort to have them present for trial. There wasn't any competent evidence of efforts to do that. The declaration that was submitted on those issues was not under penalty of perjury. Well, help me out. Didn't he know by the time of the deposition that he was no longer going to be in custody? He did know. He did know that. We knew that. When the stipulation was filed for the deposition, we knew that the deposition would take place the 25th and that he would be released the 28th. And he never, and Plans Council never, I mean that speaks for itself, but he also never, he would have had to file a habeas petition, wouldn't he, to have him appear at trial? If he was in custody, in addition to the subpoena, there would have to be a habeas petition. Correct. No, he had already been served with a valid trial subpoena as of the date of the deposition, so he didn't need to do anything more at that point. The guy was going to be out of custody. He had been served with a valid subpoena to show up on this date in this courtroom to give testimony. That's right. So you're saying that that's not enough, that the plaintiff's lawyer has to do more to ensure that the person does in fact show up? I think he has to show reasonable diligence to secure his appearance at trial, and I respectfully disagree with the issue regarding whether he had to tender fees. I think the district court was correct in its analysis. I think you're wrong on that, so let's just assume that you're, and maybe my colleagues disagree with me, but I'm not with you on that. So I'm assuming that we have a witness who has been served with a valid subpoena that commands him under court order to show up on a given date, and the person doesn't show up. We have a declaration, I guess I want to hear what you have to say about it, from plaintiff's counsel saying that I did have my investigator before trial go out and at least make some efforts to track this guy down, and we can't find him. So that's why I want to use this deposition, right? And I have not found any authority that requires a person who wants to use the deposition testimony of an unavailable witness to do more than that in terms of trying to make sure that they show up. But do you have authority to speak to that issue? The declaration was not a competent declaration. It was not submitted under the penalty of perjury. It was not a declaration of the investigator who allegedly made efforts to find the witness. It did not mention going to the place where the witness said he would be, which was Owens Place in Huntington Beach, California. So as the district court acknowledged, there was no competent evidence of any efforts to get him there. The district court considered that, nonetheless, in deciding whether or not an evidentiary error had been made. Well, but I guess what I'm asking is do you have any authority that says I have to do more than serve somebody with a valid subpoena, and then if they don't show up, I'm entitled to use their deposition? Is there some authority that says that speaks to that precise issue? I don't believe so. I don't have it, no. I mean, I have found cases that support your position here when the person never tried to subpoena the witness, and then they just say, oh, well, I was kind of hoping that they would be here, and the judge says, well, what are you talking about? You never even subpoenaed them. This person's not unavailable. Give me a break. But when someone has been subpoenaed, it just seems to me, doesn't the legal system assume that they're going to obey that order to show up? So it seems a little bit odd to say that, well, the plaintiff's lawyer had to do a lot more to track the guy down. I understand that. I understand. Notwithstanding the position regarding the valid service of the subpoena, there was harmless error here. This witness did not substantially corroborate what the plaintiff testified to at trial. He said that there was blood when the plaintiff went to the ground. The plaintiff never said that. The medical records don't show that. Even in the plaintiff's brief, in the appellant's brief, where they talk about swelling to the face, the record doesn't show that. What it shows is that when he was examined by medical staff at the jail, that there was a quarter-sized place, I believe, on his left cheek that was different than the other side, but no swelling. That was it. Counsel, you're out of time, so unless my colleagues have any more questions, I think we need to hear from your opponent. All right. Okay, we'll give you one minute for rebuttal. Thank you very much. Thank you. In conclusion, Your Honors, I just wanted to point out that defense counsel's characterizations of all these objections are simply things that he said in a declaration. Well, that's not true. At ER 69, there's an email to you saying, I'm going to object. So are you saying you didn't receive it? The email that he's going to object for it being an exhibit. I don't believe it was that he was going to object that we would read from the deposition transcript and it would be entered into the record. He didn't want it as an exhibit, and that's what he had. We had an exhibit list, and as part of the exhibit list, we put photographs, we put evidence, and I had put the deposition transcript. It says, I have not agreed that he is unavailable, and therefore I am not agreeing that any portion of his deposition may be read at trial, in an email to you on August 13th. I simply don't remember that, Your Honor. Quite frankly, I don't remember that. Did he say on his deposition that he would be at Owen's place? I believe he had said he would be at a rehab center. He thought it was going to be this Owen's place, but he wasn't sure what rehab center it was. So I did call the county probation department and ask them about the rehab centers, if I could have a directory, and they gave me a number of different places, and I tried calling them, and they all told me that under- But is that diligence? Don't you have to go there? I mean, he says he's going to be there. You can't go there because they have privacy rights. You can't go ask for a person's information or contact or speak to them when they're at a rehab center. There was no way I could get a hold of him, even with a subpoena. I couldn't talk to him. Well, if there's a privacy right, isn't there a custodian there who would give him the subpoena? Well, I wasn't aware of that, Your Honor. I mean, I- Everything I could. As I mentioned, I did have an investigator trying to find him. I mean, I don't know what more I could do. I tried to do everything I could to get this witness- Well, you could tell the investigator to go to Owen's place. Well, I believe Mr. Gerringer had made that effort also, but we didn't submit his declaration. I mean, we did everything we could to try to get him to be there, and it's just fundamentally unfair what happened in this case, and we should have had the opportunity to have this witness testify. Even if he had been there, would his testimony have made any difference? Absolutely. You have somebody saying that something happened to them, and then you have someone three and a half years later that has no connection with this person saying, I saw this and it happened the way he says it happened. But it's not the way your client said it happened. Well, there may have been a couple, but that's for a jury to decide. That's a question of fact. Whether or not it's so diametrically different, it wasn't. It was almost identical to the details of the force. If he saw something he thought was blood, I don't know, but that was for a jury to decide. How about hitting his head against something? Well, he did see him hit his head against the plexiglass. That was the most important fact, and that fact would have made a big difference. But your client, maybe he said that at trial, but he didn't say that in prior statements. Yes, he did. Did he always say he hit his head? He said it was grabbed by the back of his neck and slammed into a plexiglass wall.  That was consistent with the witness's testimony. No, it was a testimony consistent with what? I'm sorry, Your Honor. Maybe I'm misremembering the record. I thought that at times he had said he never said anything about being hit against the wall. Did he always say it was hit against the wall? From the very beginning, the plaintiff said it was recorded. In fact, the defense hid a recorded statement from the plaintiff that was taken from him two months afterwards that was identical to his description of what happened. They hid it from you. I had to make a motion to compel that. Their whole defense was it was a non-event. And at their closing argument, they even said that Mr. Forbes was not worthy of getting any credibility because he's a two-time loser. So obviously, if you had a witness that would say, I saw this, it happened this way, consistent with Mr. Forbes, then at least he would have a fighting chance, at least. That was taken away from him. That's not a fair trial. Our system of justice requires people to have a fair trial. That's what I learned in law school, and that's what I'll fight for to the very end. Thank you, Your Honor.  The case is submitted.
judges: Watford, Friedland, Motz